# IN THE COURT OF APPEALS OF IOWA

No. 23-2040
Filed March 5, 2025

**GREEN BELT BANK & TRUST,**
    Plaintiff-Appellant,

**vs.**

**UNVERFERTH MANUFACTURING COMPANY, INC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Butler County, DeDra Schroeder, Judge.

Judgment creditor appeals an order of garnishment. **AFFIRMED.**

Jonathan Kramer of Whitfield & Eddy, PLC, Des Moines, for appellant.

G.A. Cady III of Cady & Rosenberg Law Firm, Hampton, for appellee Unverferth Manufacturing Company.

Heard by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

Judgment creditor Green Belt Bank & Trust appeals an order of garnishment entered by the district court against Unverferth Manufacturing Company, Inc., the employer of judgment debtor Mashon Van Mill. Green Belt challenges the district court's application of the garnishment exemption under Iowa Code section 642.21(1)(e) (2020) to determine Green Belt could recover "only ten percent of the total invoice value during the garnishment period." Upon our review, we affirm.

## I. Background Facts and Proceedings

Green Belt initiated a debt-collection suit against Van Mill.[1] The district court entered judgment against Van Mill in favor of Green Belt in excess of $2,600,000. After attempting to collect the judgment through general execution, Green Belt served a notice of garnishment on Unverferth, requesting a withholding of Van Mill's earnings.

Unverferth failed to surrender funds to Green Belt pursuant to the notice of garnishment, maintaining it did not "compensate the Judgment Debtor for any personal service in wages, salary, commission, bonus or otherwise."[2] Green Belt filed a pleading controverting Unverferth's answers to interrogatories, claiming Unverferth's representation was "false and untrue, as the Garnishee, Unverferth,

---

[1] Green Belt named other debtors in the suit, including Stephanie Van Mill and Van Mill Farms, LLC. For purposes of this appeal, Mashon Van Mill is the only relevant debtor.

[2] Unverferth's initial answers to Green Belt's interrogatories stated it compensated Van Mill around $100,000 annually. Unverferth later submitted a "corrected" interrogatory response, "per counsel conversation," maintaining it did not compensate Van Mill.

has some employment/independent contractor relationship with Defendant Mashon and pays Defendant Mashon perhaps $100,000.00 annually." Green Belt requested the district court enter judgment against Unverferth.

The matter proceeded to a hearing. Unverferth's chief financial officer, Sandra Klear, acknowledged Van Mill had worked as an independent contractor of Unverferth—under the company name Van Mill Farms—"for quite some time." Unverferth paid Van Mill Farms to build pallets, remove snow, and landscape.[3] In March 2022, Van Mill Farms "changed names" to Hill Top Industries. The parties agreed that during the garnishment period of August 1 through November 9, 2022,[4] Unverferth paid Hill Top Industries $121,299.79.

Unverferth maintained, however, because it had "never paid Mashon Van Mill directly," it was not indebted to Van Mill, and so it was not liable to Green Belt pursuant to the garnishment.[5] Unverferth further argued, even if the court determined it was liable under the garnishment because "Mashon Van Mill acts as an independent contractor," Unverferth "would only be limited to the ten percent withholding of the $121,[299.79]." *See* Iowa Code § 642.21(1)(e) (entitling garnishment of "not more than ten percent of an employee's expected earnings" for "[e]mployees with expected earnings of fifty thousand dollars or more").

---

[3] Klear testified Van Mill was employed by Unverferth "from 2006 to maybe 2008." Since then, Van Mill "has been an independent contractor with Unverferth"— initially as Van Mill Farms, and since March 2022, as Hill Top Industries.

[4] Green Belt served the notice of garnishment on Unverferth on August 1, 2022. The notice stated in part, "Garnishment is effective immediately upon service and should continue until the expiration date of: 11/09/2022."

[5] As Klear testified, "[W]e had paid Van Mill Farms in the past; but Unverferth was not aware that you could even garnish an independent contractor . . . ."

Ultimately, the district court found "Van Mill was an independent contractor of Unverferth," and the money "paid by Unverferth to Mashon Van Mill/Hilltop Farms/Van Mill Farms was subject to garnishment." But the court concluded the garnishment was "limited to the garnishment period and was subject to state and federal statutory constraints on wage garnishment," including Iowa Code section 642.21(1)(e). The court concluded Green Belt was "entitled to $12,129.98 plus interest at the statutory rate from November 9, 2022."

Green Belt filed a motion to enlarge, asserting Unverferth was not entitled to an exemption under section 642.21(1)(e) because "the burden of proof of an exemption is on the person claiming it" and Van Mill "did not claim an exemption." Green Belt further argued "the record does not contain substantial evidence to support the finding that [the] garnishment amount was for 'personal services'" to entitle "Unverferth [to] a reduction of judgment to 10% of that amount." *See* Iowa Code § 642.21(3)(a) (defining "earnings" for the purpose of section 642.21 to "mean[] compensation paid or payable for personal services"). The district court denied the motion. Green Belt appeals.

## II. Standard of Review

"Appellate review of garnishment proceedings is for legal error." *L.F. Noll, Inc. v. Premiere Bus. Sols., LLC*, 988 N.W.2d 430, 433 (Iowa Ct. App. 2022). "The district court's findings of fact are binding upon us if those findings are supported by substantial evidence. However, we are not bound by the district court's legal conclusions, and we may inquire into whether the district court's ultimate conclusions were materially affected by improper conclusions of law." *Ellefson v. Centech Corp.*, 606 N.W.2d 324, 330 (Iowa 2000) (internal citation omitted).

## III.    Discussion

On appeal, Green Belt challenges the district court's application of the exemption in Iowa Code section 642.21(1)(e).  Green Belt claims: "(1) Unverferth does not have standing to assert a personal exemption of Mashon Van Mill, (2) the claimed exemption does not apply to independent contractor relationships, and (3) if Unverferth did have standing, Unverferth failed to prove the applicability of the exemption."  In short, Green Belt claims the court erred by failing to enter judgment on the full amount of Van Mill's earnings during the garnishment period—$121,299.79.

Iowa Code section 642.21(1)(e) states:

> The disposable earnings of an individual are exempt from garnishment to the extent provided by the federal Consumer Credit Protection Act, Tit. III, 15 U.S.C. § 1671—1677 (1982).  The maximum amount of an employee's earnings which may be garnished during any one calendar year is two hundred fifty dollars for each judgment creditor, except as provided in chapter 252D and sections 598.22, 598.23, and 627.12, or when those earnings are reasonably expected to be in excess of twelve thousand dollars for that calendar year as determined from the answers taken by the sheriff or by the court pursuant to section 642.5, subsection 1, question number four.  When the employee's earnings are reasonably expected to be more than twelve thousand dollars, the maximum amount of those earnings which may be garnished during a calendar year for each creditor is as follows:
> . . . .
> e. Employees with expected earnings of fifty thousand dollars or more, not more than ten percent of an employee's expected earnings.

See also Iowa Code § 642.21(3)(a) ("For the purpose of this section . . . [t]he term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.").

*A.     Independent Contractor*

We turn first to Green Belt's assertion that section 642.21(1)(e) does not apply to independent contractors.  Our court answered this question in *Marian Health Center v. Cooks*, 451 N.W.2d 846, 847–48 (Iowa Ct. App. 1989).  There, the court observed "[t]here is very little Iowa case law on when the exemption applies," so it relied on its interpretation of the statute and the legislature's intent. *Marian Health Center*, 451 N.W.2d at 847.  Ultimately, the court determined the legislature did not intend to "distinguish[] standard employees from independent contractors."  *Id.* at 848.  The court reasoned:

> It seems clear that the legislature was more concerned with separating types of income rather than distinguishing standard employees from independent contractors.  The phrase "personal services" as used by the legislature means wages for work done by the person.  This was intended to distinguish it from income from certificates of deposit or other investments.  The intent of the legislature could not have been to distinguish employees from independent contractors.  One of the express purposes of the statute is to prevent bankruptcies and the predatory extension of credit. Garnishing an independent contractor's income to exhaustion will result in bankruptcy as surely as it will with an employee.
> The wording of the statute suggests the legislature was primarily concerned with the prevention of bankruptcies.  However, the legislature also recognized that certain types of income may not need protection from garnishment as they are usually a secondary income.  While income from the personal services of a person is usually what puts bread on the table.  This is exactly the situation where the exemption is required in order to prevent a possible bankruptcy or the predatory extension of credit.  It is not reasonable to assume the Iowa legislature intended to protect employees and to let independent contractors starve or go into bankruptcy.  The income of [an independent contractor] is protected by the Iowa exemption law.

*Id.* at 847–48; *accord In re Sexton*, 140 B.R. 742, 743–44 (Bankr. S.D. Iowa 1992) (citing *Marian Health Center*, 451 N.W.2d at 847–48) ("Iowa law does not distinguish for earnings, income, or wage exemption purposes (under § 642.21

. . .) between independent contractors and employees. Rather, the focus should be on distinguishing between types of income.").

There is no dispute Van Mill was an independent contractor of Unverferth who earned "fifty thousand dollars or more" per year. Accordingly, the district court correctly determined Van Mill's earnings were exempt from garnishment to the extent allowed by section 642.21(1)(e).

*B.      Standing*

Green Belt claims Unverferth lacked standing to claim an exemption because "the exemption is personal to the debtor," Van Mill. According to Green Belt, "[b]ecause Mr. Van Mill did not raise any claim of exemption, it was error for the district court to consider it."

We find the court's opinion in *L.F. Noll, Inc.* instructive. *See* 988 N.W.2d at 437–39. There, as here, the judgment creditor brought a garnishment proceeding against the judgment debtor's employer claiming the employer failed to comply with a notice of garnishment. *Id.* at 432. The judgment debtor was not part of the proceeding. *See id.* The district court entered judgment against the employer for the entire balance on the judgment owed to the creditor. *Id.* at 432–33. The employer appealed, arguing in part "if judgment in some form was proper," it should be limited by the duration of the garnishment period and the amount of the employee's earnings during that time. *Id.* at 433. Our court reversed, concluding the employer was only liable to the judgment creditor for the amount due from the employer to the employee "that arose while the notice of garnishment was effective or for delivery of the same within a time fixed by the court, *subject to state and*

*federal statutory constraints on wage garnishment.*" *Id.* at 438 (emphasis added) (citing Iowa Code § 642.21).

Statutes of exemption must be liberally construed to "carry[] out the beneficial object of the legislation." *Frudden Lumber Co. v. Clifton*, 183 N.W.2d 201, 203 (Iowa 1971). And it does not require the judgment debtor to raise an exemption claim.[6] *See, e.g.*, *Cap. One Bank v. Edison Credit Union*, 299 S.W.3d 662, 666 (Mo. Ct. App. 2009) (analyzing under Missouri's similar statute a garnishment claim relating to "whether the judgment debtor must assert the exemption of the unemployment compensation from garnishment or whether the garnishee may assert the defense on behalf of the judgment debtor" and holding "[a] garnishee does not have an obligation to assert a defense on behalf of a judgment debtor, but it may do so if it chooses" (citation and footnote omitted)). Under these facts and circumstances, we find no error in the court's application of section 642.21.

### C. Personal Services

Green Belt further claims even if "Unverferth did have standing, Unverferth failed to prove the applicability of the exemption." On this point, Green Belt maintains "[t]he 'personal services' aspect of earnings is not expressly defined in either the federal or state statutes," and "the record is devoid of any attempt by Unverferth to demonstrate which, if any, of the invoices for payments to 'Hill Top

---

[6] To support its contention, Green Belt relies on language in section 537.5105 of the Iowa Consumer Credit Code, which directs the consumer to "designate the portion of the consumer's earnings which are not exempt from garnishment" when filing an application for exemption under that section. Green Belt's comparison is unpersuasive. We do not read the absence of such language in section 642.21 as imposing an unidentified requirement on the judgment debtor.

Industries' were actually for specific 'personal services' that were performed by Mashon Van Mill, himself."

This claim implicates paragraph (3)(a), which states, "For the purpose of [section 642.21] . . . 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." As noted above, "[t]he phrase 'personal services' as used by the legislature means wages for work done by the person," which "was intended to distinguish it from income from certificates of deposit or other investments." *Marian Health Ctr.*, 451 N.W.2d at 848; *see also Sexton*, 140 B.R. at 744 (observing "the legislature was more concerned with distinguishing between types of income, for example, income from investment versus income from personal services").

On this question, the district court found:

> Evidence presented was that Mashon Van Mill was an independent contractor of Unverferth and had been in that relationship since 2008. Mashon Van Mill had provided services to Unverferth and Unverferth simply paid monies owed to the name requested by Mashon Van Mill, whether that be Van Mill Farms or Hilltop Industries. The person performing the work and the work performed did not change.

The court's "findings of facts have the force of a jury verdict and are binding if supported by substantial evidence." *Marian Health Ctr.*, 451 N.W.2d at 847. Unverferth's chief financial officer, Klear, testified Van Mill had acted as an independent contractor for Unverferth under the name Van Mill Farms for many years: "They build pallets for us, snow removal, lawn mowing." In early 2022, Van Mill notified Unverferth that Van Mill Farms had a "name change" to Hill Top Industries. As Klear testified, "We received . . . an EIN number from them, but we

swore it was Hill Top Industries. It was Van Mill Farms, and we don't—we just assumed that it was the same, they just changed names."

Klear agreed that during the garnishment period Hill Top Industries "was invoicing Unverferth for Mashon Van Mill's independent contractor services." As she explained, "[Van Mill] just submits the documentation, the invoices; and it would come through our purchasing department. . . . He could drop off the invoices. They could be dropped off or mailed." The record includes nearly two hundred invoices submitted by Van Mill during 2022 and 2023. Although some list only a number of "hrs" for "week of ___," others are more detailed and include line-item descriptions such as "property mow and thatch and bag grass broom rock out of lawn area from winter snow removal garbage pick up on property and neighbors fields," "end cap shipping skid assembly," "property spray," and describe different types and capacities of pallets. Upon our review, we conclude substantial evidence supports the court's finding that Van Mill "provided services to Unverferth."

We affirm the district court's order of garnishment.

**AFFIRMED.**